CHARLES STEWART AND VIOLA GREENER, PLAINTIFFS-APPELLANTS, v. WASHINGTON CAMP NO. 7, PATRIOTIC ORDER, SONS OF AMERICA, DEFENDANT-RESPONDENT.

Submitted January 26, 1932—Decided April 8, 1932.

Before Justice CAMPBELL, LLOYD and BODINE.

For the plaintiffs-appellants, *Philip M. Chamberlin.*

For the defendant-respondent, *Richard C. Chamberlain, Jr.*

PER CURIAM.

The plaintiffs are half-brother and half-sister of one Albert T. Stewart, who in his lifetime was a member of the defendant fraternal society organized under the laws of this state.

The statute, controlling defendant's organization, provides that fraternal beneficiary associations may provide death benefits for "the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon, the members." 1 *Comp. Stat., p.* 197.

The statute exempts fraternal beneficiary associations from the provisions of the insurance laws of this state. Such organizations have been given special consideration under our laws for nearly eighty years, because of their benevolent and charitable acts.

The defendant's by-laws provide for payment of death benefits to the widow and next of kin, or legal representative of a deceased member, and if there be none such, provision is

made for the expenditure of the benefits, or some part thereof, for the expenses of the last illness, funeral expenses and a grave marker. Stewart left neither a widow or children, but he made a will by which he appointed Edwin Cooke executor. Cooke qualified, and payment of the death benefits, which amounted to $500, was made to him. The plaintiffs sought payment to them. The case was tried before the District Court without a jury, upon an agreed state of facts. The sole question is whether the judgment should have been entered in favor of the plaintiff.

The statute above adverted to was enacted March 11th, 1893, and went into effect immediately. Prior thereto, fraternal organizations of similar purpose, had been regulated under the Revision of 1875, and the supplements thereto. *Pamph. L.* 1853, *p.* 355; *Pamph. L.* 1855, *p.* 770; *Pamph. L.* 1873, *p.* 31; 1 *Gen. Stat., p.* 149.

By supplement to the Revision of 1875 (*Pamph. L.* 1883, *p.* 57), it was provided that it should be lawful for such association to pay the death benefits to the husband, wife, father, mother, brother, sister or *legal representative* of such member after his or her death

Mr. Justice Magie, speaking for the Court of Errors and Appeals, in *Golden Star Fraternity* v. *Martin,* 59 *N. J. L.* 207 (at *p.* 212) ; 35 *Atl. Rep.* 908, respecting this later enactment, said: "It appears that it was designed to empower such associations to contract to pay 'death benefits' according to their rules and by-laws, but the contract is to be limited to the payment of such death benefits, after the death of the member, to certain specified relatives or connections of the member or to his or her legal representative. It is obvious that such a contract is of the nature of a contract of life insurance. But so far as it provides for the payment of death benefits to the near relatives and connections of the deceased member as a gratuity to them, it is life insurance having a benevolent purpose. Authority to make such contracts of life insurance, in my judgment, could be conferred upon such associations under the title of this act. But the act also authorizes a contract to pay death benefits to the *legal representative*

of a deceased member. When there is no context to indicate that the phrase 'legal representative' is to be taken as meaning some other relative, it is to be considered as meaning the executor or administrator of a deceased person. *Lodge* v. *Weld,* 139 *Mass.* 499. A contract to pay death benefits to the member's executor or administrator is obviously a contract of ordinary life insurance. Upon the member's death his estate would be increased by the sum thus contracted to be paid, and the transaction would have no benevolent or charitable feature whatever. Authority to make such a contract is not, in my judgment, within the title of this act."

It is to be noted that our present statute (1 *Comp. Stat., p.* 197), does not provide for payment to the legal representative of a deceased member. Section 9 of the general act for the incorporation of associations not for pecuniary profit (*Pamph. L.* 1898, *p.* 422), provides as follows: "It shall be lawful for associations incorporated under this act, where their certificate of incorporation so specifies, to provide for the relief of disabled or destitute members or their families and to maintain a fund for that purpose, or to contract with their members to pay death benefits according to the rules or by-laws adopted by such associations, and to agree to pay the same to the husband, wife, father, mother, son, daughter, brother, sister or *legal representative,* of such member, after his or her death, which contract the beneficiary therein named shall have full legal power to enforce in proceedings at law or equity."

The Supreme Court said in *Ryan* v. *Firemen's Benevolent Association,* 77 *N. J. L.* 399, 401, that *Pamph. L.* 1898, *p.* 165, did not authorize a charitable institution to assume the functions of a life insurance company and pay benefits in a way different from that provided under the laws in existence at the time of their organization. The defendant was organized October 29th, 1895.

By chapter 76, *Pamph. L.* 1899, sundry acts relating to corporations not for pecuniary profit and sundry acts relating to fraternal beneficiary societies were repealed, but the pertinent portion of the act of 1893 appears not to have been dis-

turbed. Further it was in identical form embodied in an amendment of 1907. *Pamph. L., p.* 435. The defendant was therefore confined to making of contracts for payments to the families, heirs, blood relatives, &c. Stewart having such a contract, payment should have been to the next of kin since there was no widow. Vice-Chancellor Reed made such distribution in *Radient Temple* v. *William R. Piper,* 62 *N. J. Eq.* 565.

Advisory Master Kocher (*In re Beidelman's Estate,* 4 *N. J. Mis. R.* 549; 133 *Atl. Rep.* 873) so construed the funeral benefit contract before him as entitling the widow to the proceeds thereof rather than the executor. He said: "There appears to be no reported case directly in point. The case of *Carpenter* v. *Alert Council,* reported in 26 *N. J. L. J.* 373, comes the nearest in point. In that case the by-laws provided that the payment shall be made to the widow or near relative of the deceased. There was no widow, and the court construed the 'near relative' to be the next of kin, and excluded the administrator or executor of the deceased from any claim upon the funeral benefit. It was held, however, that the mere fact that the administrator paid the funeral expenses out of the estate was an irrelevant circumstance; the direction of the constitution and by-laws as to payment, being explicit, must be obeyed."

Further, "the law is settled, that it is not within the power of either a member of such a corporation, or of the corporation itself, or of the two combined, to divert any part of the fund raised or accumulated for the benefit of the beneficiaries named in the statute under which the corporation is organized, to any other person, or to apply it to any other purpose than that authorized by such statute authorizing the formation of corporations to accumulate a fund to be paid to the widows and children of deceased members, the corporation can only pay the fund to the widows and children of deceased members, and if it should make a promise to pay any part of it to any other person, its promise would be void. Its promise would not only be *ultra vires,* but in direct contravention of the purpose of the statute from which the corpo-

ration derived both its corporate existence and power. And a member of such a corporation is equally powerless to divert from its appointed channel that part of the fund of the corporation which becomes payable on his death." *American Legion of Honor* v. *Smith,* 45 *N. J. Eq.* 470.

Notwithstanding the provisions of the by-laws, which we cannot and do not regard as conferring a right upon the defendant to choose to make payment either to the executor or to the next of kin, the law is well settled that *Pamph. L.* 1893, *p.* 232 (1 *Comp. Stat., p.* 197), controlled the defendant's incorporation and limited its contracts to such as had a benevolent or charitable feature. The defendant could not, under its charter, make contracts which would increase the estate to be administered in behalf of its members.

Since the statute under which the defendant was organized gives it no power to make payment of death benefits to the legal representatives of deceased members, payment to such legal representative is no bar to an action by the beneficiaries who sue in their own right.

The judgment is reversed, with costs.